

IN THE
TENTH COURT OF APPEALS

No. 10-14-00054-CR

**PLATO AUGUST SPLAWN, JR.,**

                                                                Appellant

 **v.**

**THE STATE OF TEXAS,**

                                                                Appellee

From the 12th District Court
Walker County, Texas
Trial Court No. 25,790

## MEMORANDUM OPINION

In two issues, appellant, Plato August Splawn Jr., challenges his conviction for attempted capital murder of multiple persons. *See* TEX. PENAL CODE ANN. § 15.01(a) (West 2011). Specifically, Splawn contends that the trial court: (1) committed reversible error by denying his *Batson* challenge as to Juror Number 7, *see generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); and (2) erred by making a deadly-weapon finding. We affirm.

# I.   BACKGROUND

On February 21, 2012, Splawn was indicted for the offense of attempted capital murder of multiple persons. The offense stems from an incident where Splawn shot his estranged wife, Sandra, and killed his longtime friend and employee, Edwin Garcia, after Splawn learned that Sandra and Edwin were having an affair.

Pursuant to a plea bargain with the State, Splawn pleaded guilty to the charged offense and elected for the jury to assess his punishment. After hearing testimony during the punishment phase, the jury sentenced Splawn to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court made a deadly-weapon finding and certified Splawn's right to appeal the imposed sentence only. Thereafter, Splawn filed a motion for new trial and a motion in arrest of judgment. Both motions were overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II.   SPLAWN'S *BATSON* CHALLENGE

In his first issue, Splawn contends that the trial court erred in denying his *Batson* challenge to the State's use of a peremptory strike against Juror Number 7.

### A.   Applicable Law

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge

potential jurors on account of their race." 476 U.S. at 89, 106 S. Ct. at 1719. A *Batson* challenge to a peremptory strike consists of three steps: (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *See Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Thus, the burden of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is

genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

## B.     Discussion

During voir dire, Splawn objected to the State's exercise of peremptory strikes on Juror Numbers 6, 7, 13, 18, 19, and 27; however, on appeal, Splawn focuses his first issue on Juror Number 7, who is an African-American male named Malcolm Corby. At trial, Splawn contended that the State exercised its peremptory strike on Juror Number 7 "based upon race and gender," which, as Splawn argued, violated his "rights under the purview of Batson versus Kentucky under the equal protection clause of the Fourteenth Amendment to the United States Constitution." In response to Splawn's contention, the State provided the following explanation for the strike: "Mr. Corby was called up earlier on, your Honor. He had knowledge of the case and had read about the case in the newspaper and he also believed that the relationship of the parties would be relevant to his punishment decision." The trial court subsequently denied Splawn's *Batson* challenge.

Here, Splawn made a prima facie showing that the State's strike may have been racially motivated. However, the State responded to Splawn's *Batson* challenge with a race-neutral reason for using a preemptory strike on Juror Number 7—knowledge of the case and possible bias regarding the relationship of the parties and the punishment decision. Splawn was unable to refute the prosecution's explanation or demonstrate that

the State's explanation was merely a pretext for discrimination.[1]  *See Williams v. State*, 301

S.W.3d 675, 688 (Tex. Crim. App. 2009); *see also Ford*, 1 S.W.3d at 693.  Therefore, according

great deference to the trial court's denial of Splawn's *Batson* challenge, we cannot say that,

based on our review of the record, the trial court's ruling is clearly erroneous.  *See Snyder*,

552 U.S. at 477, 128 S. Ct. 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see*

*also Landrum v. State*, No. 10-13-00281-CR, 2014 Tex. App. LEXIS 10194, at *4 (Tex. App.—

Waco Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication).  We overrule

Splawn's first issue.

## III.    DEADLY-WEAPON FINDING

In his second issue, Splawn contends that the trial court erred in making a deadly-

weapon finding because no such formal finding was made by the jury.

A trial court must enter a deadly-weapon finding in the judgment if the trier of

fact affirmatively finds that the defendant used or exhibited a deadly weapon during the

commission of a felony offense or during immediate flight therefrom.  TEX. CODE CRIM.

PROC. ANN. art. 42.12, § 3g(a)(2) (West Supp. 2014); *see Polk v. State*, 693 S.W.2d 391, 394

(Tex. Crim. App. 1985).  "On an affirmative finding that the deadly weapon was a firearm,

the court shall enter that finding in its judgment."  TEX. CODE CRIM. PROC. ANN. art. 42.12,

---

[1] In response to the State's contention, Splawn did argue that:  "[E]specially with regard to Juror No. 7, other jurors had indicated that they had read something about this case and the State didn't exercise peremptory challenges on them, so we would reurge our objection."  However, Splawn did not address the State's contention that Juror Number 7 was possibly biased with respect to the relationship of the parties and the punishment decision.

§ 3g(a)(2). An affirmative finding by the factfinder is required; an implied finding will not support the entry of a deadly-weapon finding. *Sanders v. State*, 25 S.W.3d 854, 856 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd); *see Polk*, 693 S.W.2d at 394.

Since Splawn was tried by a jury, the trial court had no authority to make an independent, affirmative deadly-weapon finding. *See Sanders*, 25 S.W.3d at 856 (citing *Easterling v. State*, 710 S.W.2d 569, 581 (Tex. Crim. App. 1986)). However, a trial court is authorized to make an affirmative deadly-weapon finding in the following three situations: where the jury has (1) found guilt as alleged in the indictment and the deadly weapon has been specifically plead as such using "deadly weapon" nomenclature in the indictment; (2) found guilt as alleged in the indictment but, though not specifically plead as a deadly weapon, the weapon plead is per se a deadly weapon; or (3) affirmatively answered a special issue on deadly weapon use. *Id.* (citing *Davis v. State*, 897 S.W.2d 791, 793-94 (Tex. Crim. App. 1995); *Polk*, 693 S.W.2d at 396).

In the instant case, the indictment alleged the following:

> [T]hat on or about the 6th day of December, 2011, and anterior to the presentment of this indictment, in the County and State aforesaid PLATO AUGUST SPLAWN, JR. did then and there, with specific intent to commit the offense of capital murder of Sandra Splawn, do an act, to-wit: *cause the death of Edwin Garcia and then shoot Sandra Splawn with a firearm*, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended . . . .

(Emphasis added). Splawn pleaded guilty to the charged offense and elected to have the jury assess his punishment. The State concedes that the punishment charge did not

contain the phrase "as charged in the indictment," and the record does not reflect that the punishment charge included a special deadly-weapon issue; however, the punishment charge did state the following: "You have found the defendant, PLATO AUGUST SPLAWN, JR., guilty of the offense of ATTEMPTED CAPITAL MURDER."

The statutory definition of "deadly weapon" includes "a firearm" or "anything that in the manner of its use . . . is capable of causing death . . . ." TEX. PENAL CODE ANN. § 1.07(a)(17) (West Supp. 2014). And as mentioned earlier, the indictment alleged that Splawn caused the death of Edwin and shot Sandra with a firearm—an allegation to which Splawn pleaded guilty. *See id.*; *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) ("To hold evidence legally sufficient to sustain a deadly weapon finding, the evidence must demonstrate that: (1) the object meets the statutory definition of a dangerous weapon; (2) the deadly weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) that other people were put in actual danger." (internal citations & quotations omitted)). Furthermore, the jury found Splawn guilty of the charged offense.

Having found Splawn guilty of the charged offense of attempted capital murder, the jury necessarily found that Splawn used something that in the manner of its use was capable of causing—and did cause—death. *See Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2009) ("Another reason is that a verdict of homicide is a finding that a deadly weapon was used. . . . Having found the defendant guilty of homicide, the jury

necessarily found that the defendant used something that in the manner of its use was capable of causing—and did cause—death. Therefore the verdict was an adequate basis for the trial court's entry of the deadly-weapon finding in the judgment."). Accordingly, we conclude that the verdict was an adequate basis for the trial court's entry of the deadly-weapon finding in the judgment. *See id.* We overrule Splawn's second issue.

## IV. CONCLUSION

Having overruled both of Splawn's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed July 30, 2015
Do not publish
[CRPM]

